IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

KYM ANDREW WALLACE            §
                              §
v.                            §        Civil No. 6:26-CV-159
                              §        Criminal No. 6:24-CR-115
                              §
UNITED STATES OF AMERICA      §

### GOVERNMENT'S RESPONSE TO § 2255 MOTION

Kym Andrew Wallace has filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, raising several ineffective-assistance-of-counsel claims. The Court should deny the motion on all grounds.

### Proceedings

On May 29, 2024, officers with the Longview, Texas Police Department (LPD) were called to an apartment for a suspected drug overdose, at which time officers found victim L.T. unresponsive and without a pulse. Criminal ECF Doc. 42; PSR ¶ 6. Officers attempted to resuscitate L.T. with no success, noting that red fluids leaked from her nose and mouth. *Id.* L.T. was then transported to the Christus Good Shepherd Medical Center but was later pronounced dead on June 5, 2024. *Id.* The autopsy report, medical records, and investigation of the scene indicated a probable drug overdose; however, because it was not determined if the overdose was intentional or accidental, the manner of L.T.'s death was listed as "undetermined." *Id.* The 911 caller, Anthony Smith, told investigators that Ashley Flannagan and Riley Jones asked for his help when L.T. began to overdose.

Response to Section 2255 Motion-Page 1

*Id.* ¶ 7. Flannagan and Jones explained to investigators that they had purchased two Percocet pills from Wallace. *Id.* After L.T. snorted one of those pills, she began to overdose. *Id.* Investigators then turned their attention toward Wallace, who had sold the Percocet to Flannagan, and had previously sold pills to L.T. *Id.* ¶ 7.

Investigators conducted several controlled buys from Wallace, using a confidential informant, between June 26, 2024, and July 3, 2024. *Id.* ¶ 8. Wallace sold a single pill at each transaction containing .10 to .11 grams of fentanyl per pill. *Id.* This led investigators to begin surveilling Wallace. *Id.* ¶ 9. Wallace exchanged texts with an undercover officer (UC) requesting to purchase the Percocet/Fentanyl pills from him. *Id.* Wallace agreed, and officers followed him to his mother's apartment, at which time officers effected his arrest, upon which they conducted search of his vehicle as they believed Wallace had concealed contraband in the center console of his car. *Id.* That search revealed $5,584, multiple small clear plastic baggies used for packaging drugs, a Percocet/Fentanyl pill, a small amount of marijuana, and black packages labeled "Runts." *Id.* Upon removing the center console cupholders, investigators found a void with tubes containing additional Percocet/Fentanyl pills containing 10.71 grams of fentanyl, and a loaded Glock .40 caliber semi-automatic pistol with extended magazine and an illegal auto sear "switch" to make it a fully automatic firearm. *Id.* Wallace's text messages confirm that he was selling the Percocet pills and referred to them as fentanyl. *Id.*

Investigators executed a search warrant at Wallace's mother's apartment and found a loaded .32 caliber pistol, Percocet pills containing 243.12 grams of fentanyl,

**Response to Section 2255 Motion-Page 2**

ecstasy pills containing 6.52 grams of methamphetamine, 4.4 grams of Xanax, 9.65 grams of cocaine, a large amount of marijuana, additional packages labeled "Runts," two extended pistol magazines all packaged into small bags, an additional 12.54 grams of methamphetamine found in ecstasy pills, an AK-47 pistol, drug paraphernalia, and jewelry belonging to Wallace. *Id.* ¶ 10.

On September 18, 2024, a grand jury sitting in the Eastern District of Texas charged Wallace in a nine-count indictment with six counts of possession with intent to distribute and distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1); one count of use, carrying, and possession of a machinegun during, in relation to, and in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); one count of use, carrying, and possession of firearms during, in relation to, and in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and one count of unlawful possession of a machinegun, in violation of 18 U.S.C. § 922(o). Criminal ECF Doc. 1.

On January 8, 2025, Wallace entered into a binding plea agreement with the government under Fed. R. Crim. P. 11(c)(1)(C), agreeing to plead guilty to count one of the indictment: possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1). Criminal ECF Doc. 25. In exchange, Wallace and the government agreed to a sentence "not to exceed 360 months." *Id.* ¶ 4(a).

At his change-of-plea hearing, Wallace was given additional time to visit with his attorney before the proceeding. Criminal ECF Doc. 57 p. 2. After being placed under oath, Wallace was offered further time to consult with his attorney but did not seek to do

**Response to Section 2255 Motion-Page 3**

so. *Id.* p. 5. The Court continued the full Rule 11 colloquy, and Wallace attested that he was satisfied with his attorney's representation, that he had discussed the indictment and the facts of his case with his attorney, and that after those discussions he desired to enter a guilty plea. *Id.* The Court read the charge into the record, after which Wallace agreed that he understood the charge against him. *Id.* p. 6. The Court explained the range of punishment associated with the offense to which Wallace was pleading guilty, and Wallace stated he understood that range. *Id.* The government then read the terms of Wallace's 11(c)(1)(C) agreement into the record. *Id.* pp. 7-13. Wallace agreed that those were the terms of his plea agreement with the government and there was nothing in that plea agreement that he did not understand. *Id.* p. 13. The Court pointedly asked Wallace whether any other promise outside of those contained in his plea agreement was made to him in exchange for his plea, or if Wallace had been forced to enter a guilty plea. *Id.* pp. 13-14. Wallace stated that there were no other promises made to elicit his guilty plea and that he was pleading guilty without threat or coercion. *Id.* p. 14.

Wallace's counsel noted on the record that an agreement existed between Wallace, the federal government, and the state government that Wallace's guilty plea in the instant federal criminal case would resolve all pending cases against him. *Id.* pp. 14-15. Wallace agreed that he had no questions about that agreement and affirmed that he understood it. *Id.* p. 15. The Court, again to ensure that Wallace fully understood the nature of his 11(c)(1)(C) agreement with the government, asked Wallace if he understood that he was agreeing to a sentence not to exceed 360 months. *Id.* pp. 15-16. Wallace stated that he

**Response to Section 2255 Motion-Page 4**

understood. *Id.* p. 16. The Court explained that the sentencing court could deny Wallace's agreement, allowing him the opportunity to withdraw his guilty plea or to proceed without benefit of a written plea agreement, to which Wallace stated he understood and had no questions. *Id.* pp. 16-17. The Court then reviewed Wallace's trial rights and the rights he would be waiving if he persisted in his guilty plea, to which Wallace again agreed that he understood. *Id.* pp. 17-18. The Court reviewed the terms of Wallace's appellate waiver, including the appellate rights he both waived and preserved through his plea agreement. Wallace again confirmed his understanding of the agreement. *Id.* pp. 18-19. The government read the elements of the offense and Wallace's factual basis into the record. *Id.* pp. 20-21. Wallace confirmed that he understood the elements of his offense, admitted to those elements, and that everything contained in his factual basis was "true and correct." *Id.* pp. 21-23. The Court then gave Wallace another opportunity to ask questions of the Court or his counsel, but he again declined and proceeded to plead guilty. *Id.* p. 23. The Court found that Wallace's guilty plea was made knowingly and voluntarily. *Id.*

On May 29, 2025, the parties appeared for a status conference to present the Court with an amended factual basis, which corrected a typographical error and addressed a disputed stipulation. Criminal ECF Doc. 58 p. 2. After placing him under oath, the Court addressed the amended factual basis with Wallace, asking whether he had any questions about the amendment and whether he understood the changes made to it. *Id.* pp. 3-4. Wallace agreed that he had no questions and felt that he understood the changes to his

**Response to Section 2255 Motion-Page 5**

factual basis. *Id.* Thereafter, the Court conducted an ex parte hearing, off-the-record, between the Court, Wallace, and Wallace's counsel. *Id.* p. 5. Following that hearing, the status conference resumed and the Court continued reviewing the amended factual basis with Wallace. *Id.* pp. 4-6. Similar to his change-of-plea hearing, the Court asked Wallace if he understood and admitted to the stipulations recited in the amended factual basis, to which Wallace agreed. *Id.* pp. 5-6. The Court felt "confident" that Wallace understood and agreed with the contents of the amendment. *Id.* p. 6.

The next day, on May 30, 2025, United States Probation issued Wallace's final Presentence Investigation Report ("PSR"). Criminal ECF Doc. 42. The PSR calculated Wallace's total offense level to be 39. *Id.* ¶ 27. This calculation included a base offense level of 38, a two-level increase for the possession of a dangerous weapon, a two-level increase for misrepresenting the fentanyl pills as being Percocet pills, and a three-level reduction for acceptance of responsibility. *Id.* ¶¶ 17-26. Wallace had a criminal history score of 13, which resulted in a criminal history category of VI. *Id.* ¶¶ 42. Ordinarily, this would have produced a guideline range of 360 months to life imprisonment, but the parties' Rule 11(c)(1)(C) agreement capped Wallace's exposure at 360 months. *Id.* ¶¶ 64-66 & Sentencing Table. Probation recommended that the Court impose the agreed-upon maximum sentence of 360 months. *Id.* p. 22. Wallace, through counsel, filed an objection to the PSR, disputing the inclusion of the two-level increase to Wallace's total offense level for knowingly marketing fentanyl pills as Percocet pills. *Id.* p. 23. Counsel also filed a motion for a downward variance, requesting that the Court sentence Wallace to 240

Response to Section 2255 Motion-Page 6

months' imprisonment. Criminal ECF Doc. 46.  Counsel argued that Wallace's criminal history as overrepresented, given that his history consisted only of misdemeanor offenses. *Id*.

On July 30, 2025, the parties appeared for Wallace's sentencing. Criminal ECF Doc. 56. During the sentencing hearing, the Court asked Wallace whether he had a chance to review and discuss his PSR with counsel, and that he understood it. *Id.* p. 3. Wallace agreed that he had reviewed his PSR with counsel and understood it. *Id.* Wallace renewed his objection to the PSR at sentencing, which the Court overruled. *Id.* p. 5-8. Counsel then renewed his request for a downward variance. *Id.* pp. 9-11. The government presented the victim impact statement written by victim L.T.'s mother. *Id.* pp. 13-17. The Court, in accordance with Wallace's 11(c)(1)(C) plea agreement and declining to vary downward, sentenced Wallace to 360 months' imprisonment. *Id.* pp. 13, 18. The Court's final judgment was issued on July 31, 2025, reflecting this sentence. Criminal ECF Doc. 49. Wallace did not file an appeal.

Wallace timely filed the pending § 2255 motion on April 2, 2026. Criminal ECF Doc. 52; 2255 ECF Doc. 1. In the motion, he raises several claims of ineffective assistance against his former counsel.

## Section 2255 Legal Standards

Under 28 U.S.C. § 2255, a prisoner may move the convicting court to vacate, set aside, or correct his conviction or sentence. The statute provides four grounds for relief: "(1) the sentence was imposed in violation of the Constitution or laws of the United

Response to Section 2255 Motion-Page 7

States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is 'otherwise subject to collateral attack.'" *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) (citation omitted).

"It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184 (1979). "Section 2255 does not offer recourse to all who suffer trial errors." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A 1981). It may also "not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). After conviction and the exhaustion or waiver of all appeals, the Court is "entitled to presume" that the prisoner "stands fairly and finally convicted." *Id.* at 164.

### Ineffective Assistance of Counsel Legal Standards

To obtain reversal of a conviction based on ineffective assistance of counsel, a convicted defendant must show that the attorney's performance was deficient and that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The proper standard for judging the performance of an attorney is that of reasonably effective assistance considering all of the circumstances. *Id*. at 688. "When a convicted defendant complains of ineffective assistance of counsel, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. Judicial scrutiny of counsel's assistance must be "highly deferential," and "a fair assessment of attorney performance requires that

**Response to Section 2255 Motion-Page 8**

every effort be made to eliminate the distorting effects of hindsight." *Id*. at 689. A court must employ a strong presumption that counsel's conduct falls within a wide range of reasonably professional assistance. *Id*. at 690. The proper prejudice standard requires the defendant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

## Discussion

Ground One: Ineffective Assistance – Plea Phase

In Ground One, Wallace first claims that his counsel failed to "Communicate with Wallace and Inform Him of the Relevant Circumstances and Likely Consequences of Pleading Guilty As Opposed to Proceeding to Trial." 2255 ECF Doc. 1 p. 4. That claim is belied by the record. As noted above, the Court performed a full Rule 11 colloquy at Wallace's change-of-plea hearing, specifically ensuring, and with Wallace repeatedly confirming, that he understood his case, the charge, the elements, his trial rights, the penalties, and his plea agreement. The "[s]olemn declarations" that Wallace made "in open court" "carry a strong presumption of verity." *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). A defendant "ordinarily will not be heard to refute" the sworn testimony that he earlier gave at a plea hearing. *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). And no hearing or relief is warranted if a petitioner's allegations "cannot be accepted as true because they are contradicted by the record [or] inherently incredible." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68

F.3d 238, 240 (8th Cir. 1995)). He cannot now claim that his counsel was ineffective for failing to ensure that he was informed of any aspect of his case when the Court itself ensured that he was.

However, Wallace goes further. Attached to his § 2255 petition, Wallace includes a Memorandum of Law. 2255 ECF Doc. 1 pp. 13-47. Wallace specifically complains that his counsel failed to "meaningfully communicate with Wallace regarding several issues that were indispensable to any rational plea evaluation: (1) the strengths and weaknesses of the Government's evidence; (2) the heightened medical-causation requirements applicable to a "death resulting" charge; (3) available defenses under *Burrage v. United States* [134 S. Ct. 811 (2014)] and *United States v. Krieger*, 628 F.3d 587, 869 (7th Cir. 2010); and (4) Wallace's true sentencing exposure if convicted at trial compared to pleading guilty." 2255 ECF Doc. 1 p. 25.

Wallace's first complaint is unsupported by the record. Wallace signed and stipulated to *two* factual bases, which both stated:

4.    I admit and stipulate that the United States could prove that the substance was in fact a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide (also known as fentanyl), a Schedule II controlled substance, or a fentanyl analogue;

5.    I admit and stipulate that I knowingly possessed the controlled substance with the intent to distribute it and did distribute it;

6.    I admit and stipulate that the United States could prove that the use of the controlled substances that I distributed resulted in JV-1's death (or "resulted in the death of another, namely JV-1" in amended factual basis).

Criminal ECF Docs. 27, 41.

Wallace agreed at both his change-of-plea hearing and at the later status conference that he understood and agreed to these facts as what the government could prove; therefore, he knew the "strengths and weaknesses" of the evidence against him and admitted it *twice.* Criminal ECF Docs. 57 pp. 21-23; 58 pp. 5-6. Wallace cannot show that his counsel's representation "fell below an objective standard of reasonableness" as required by *Strickland.* 466 U.S. at 687.

Wallace complains that his counsel never communicated with him the "heightened medical-causation requirements for a 'death resulting' charge." 2255 ECF Doc. 1 p. 25. Relatedly, Wallace also complains that counsel failed to communicate available defenses under *Burrage* and *Krieger.* In *Burrage,* the Supreme Court held that "at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." *Burrage*, 134 S. Ct. at 892.

*Burrage* has no bearing on Wallace's case. L.T.'s autopsy report and medical records indicated a probable drug overdose, the investigation suggested drug toxicity, witnesses reported that L.T. had taken a pill obtained from Wallace immediately before

**Response to Section 2255 Motion-Page 11**

her overdose, and Wallace was found selling those same Percocet pills, which contained fentanyl. Criminal ECF Doc. 42 ¶ 6-10. This evidence establishes *Burrage's* "but-for" requirement. As the Supreme Court explained: "The harm would have not occurred in the absence of—that is, 'but for'—the defendant's conduct." *Burrage*, at 887-888. However, the Court continued: "The same conclusion follows if the predicate act combines with other factors to produce the result, so long as the other factors alone would not have done so—if, so to speak, it was the straw that broke the camel's back." *Id.* at 888. Simply stated, there is no evidence of any factor that resulted in L.T.'s death other than the overdose from Wallace's fentanyl.

Wallace also cites to *Krieger*, a Seventh Circuit case, which held that "death resulting" is a sentencing factor that can be found by a judge using a preponderance of the evidence. 628 F.3d at 866-869. While not binding on this Circuit, Wallace's reliance on this case is misplaced. *Krieger* affords him no relief, as it also follows a "but-for" requirement established in *Burrage*. *Id.* at 870-871; *Burrage*, at 887-888. As noted above, there is no evidence of any other factor leading to L.T.'s death other than the overdose she suffered from taking Wallace's fentanyl.

Moreover, Wallace signed two factual bases, each of which established that L.T.'s death was the result of the pills he sold. Criminal ECF Docs. 27 ¶ 6; 41 ¶ 6. He admitted to this fact—twice—in open court, while under oath. Criminal ECF Docs. 57 pp. 21-23; 58 pp. 5-6. *Lampazianie,* 251 F.3d at 524 (5h Cir. 2001). Furthermore, official documents, such as a written factual basis, "are entitled to a presumption of regularity

**Response to Section 2255 Motion-Page 12**

and are accorded great evidentiary weight." *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985). Thus, these claims are without merit.

Wallace next alleges that his counsel failed to explain Wallace's "true sentencing exposure if convicted at trial compared to pleading guilty." 2255 ECF Doc. 1 p. 25. This claim is also belied by the record. Wallace signed and agreed to his 11(c)(1)(C) agreement with the government, which explicitly advised that the offense penalties included "not less than 20 years or more than life." Criminal ECF Doc. 25 ¶ 3(a). Further, at his change-of-plea hearing, the Court reviewed the statutory penalties with Wallace and confirmed his understanding. Criminal ECF Doc. 57 p. 6.  Further still, Wallace's PSR contains several different references to Wallace's potential sentencing exposure:

62.   **Statutory Provisions:** The minimum term of imprisonment is 20 years and the maximum is Life. 21 U.S.C. § 841(a) and 21 U.S.C. § 841(b)(1)(C).

63.   **Guideline Provisions:** Based upon a total offense level of 39 and a criminal history category of VI, the guideline imprisonment range is 360 months to life.

Criminal ECF Doc. 42 ¶¶ 62-63.

But the PSR further illustrates the impact of Wallace's plea agreement on his potential sentence:

64.   The defendant has pled guilty to Count 1 of the Indictment, pursuant to a Rule 11(c)(1)(C), binding Plea Agreement, which requires a sentence not to exceed 360 months imprisonment. Such a sentence falls within the guidelines imprisonment range, as calculated by the probation officer. Should the Court determine such a sentence is not warranted, the Court shall give the defendant an opportunity to withdraw from the guilty plea.

65.   Had the defendant pled guilty to all counts of the Indictment, the total offense level would be 37, producing a guideline imprisonment range of

> 360 months to Life as to Counts 1 through 6 and 9. As to Count 7, the term of imprisonment is 30 years to run consecutively to any other sentence. As to Count 8, the term of imprisonment is 10 years to run consecutively to any other sentence. Thus, the defendant would have faced a total imprisonment range of 840 months to Life imprisonment. It is noted Counts 2 through 5 have a statutory maximum penalty of 20 years and Count 6 has a statutory maximum of 40 years.

> 66.    If the defendant had proceeded to trial and been convicted on all counts, the total offense level would have been 40, but the guideline imprisonment range would remain the same.

*Id.* ¶¶ 64-66.

Wallace was fully informed of his potential sentencing exposure, contrary to his current assertions. His unsupported claims do not establish deficient performance on the part of his counsel nor do they show prejudice, as required under *Strickland. United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) (unsupported allegations of ineffective assistance of counsel are insufficient to establish prejudice or deficient performance).

Indeed, Wallace's former counsel, J. Brandt Thorson, submitted an affidavit in response to Wallace's allegations. *See Exhibit A – Thorson Affidavit*. Thorson recounts that he communicated extensively with Wallace regarding the facts of his case, the terms of the plea agreement, and Wallace's sentencing exposure (after trial or through the government's plea offer). *Id.* pp. 3-4. Thorson states that Wallace was "fully aware of the evidence against him and the potential result of a jury trial and chose to accept the plea agreement." *Id.* p. 4.

Wallace next alleges that his counsel failed to "Conduct An Adequate and Independent Pretrial Investigation." 2255 ECF Doc. 1 pp. 4, 27. In his Memorandum of

**Response to Section 2255 Motion-Page 14**

Law, Wallace claims that his counsel "failed to investigate the central issue of medical causation." *Id.* p. 28. Wallace specifies that his counsel failed to "(1) obtain and meaningfully analyze the complete toxicology findings; (2) consult or retain a forensic toxicologist; (3) investigate alternative medical or pharmacological causes of death; and (4) independently verify the Government's causation theory before advising Wallace to plead guilty." *Id.* Ordinarily, a defendant who alleges a failure to investigate by his counsel must state with specificity what the investigation would have revealed and how it would have benefitted his defense. *See United States v. Glinsey,* 209 F.3d 386, 393 (5th Cir. 2000) (citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)). Wallace does not explain how these investigative actions would have benefited his defense, or what they would have revealed, as required. Indeed, it is unclear how further investigation would have helped Wallace's defense, when the medical records listed a drug overdose as the cause of L.T.'s death, witness accounts noted L.T. took pills obtained from Wallace immediately before overdosing, that those pills were found to contain fentanyl, and Wallace attested to these facts in two separate factual bases that he stipulated to and signed—and orally adopted under oath—in open court. Criminal ECF Docs. 42 ¶¶ 6-10; 27; 41; 57 pp. 21-23; 58 pp. 5-6.

Wallace also argues that counsel's failure could have prevented the government from asserting the but-for causation of L.T.'s death by revealing "the absence of definitive toxicological confirmation; competing substances or medical conditions; uncertainty acknowledged by the medical examiner; and the Government's inability to

Response to Section 2255 Motion-Page 15

conclusively establish but-for causation." 2255 ECF Doc. 1 p. 29. Wallace's unsupported

suppositions are not enough. *Rompilla v. Beard*, 545 U.S. 374, 382-83 (2005) ("[T]he

duty to investigate does not force defense lawyers to scour the globe on the off chance

something will turn up[.]"); *Tollett v. Henderson*, 411 U.S. 258, 267-68 (1973) (a

defendant who pleads guilty may only attack the knowing and voluntary character of the

guilty plea, he cannot set aside his plea by showing that "if counsel had pursued a certain

factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in

the proceedings").

Similarly, Wallace generally complains that counsel "failed to file a motion

requesting funds for a private investigator," and instead relied on the government's case

file. However, that claim is conclusory, and Wallace's unsupported allegations of

ineffective assistance are insufficient to establish deficient performance or actual

prejudice. *See Demik,* 489 F.3d at 646 (stating that "conclusional allegations" and general

claims are insufficient to establish ineffective assistance or to require an evidentiary

hearing on that issue); *see also United States v. Holmes,* 406 F.3d 337, 361 (5th Cir.

2005) ("Mere conclusory allegations in support of a claim of ineffective assistance of

counsel are insufficient to raise a constitutional issue") (quoting *Green v. Johnson,* 160

F.3d 1029, 1042 (5th Cir. 1998)).

Thorson addresses these claims in his affidavit. *See Exhibit A* p. 4. Specifically,

Thorson recounts that the toxicology report and autopsy report were part of the

**Response to Section 2255 Motion-Page 16**

government's discovery, which he and Wallace discussed "extensively." *Id*. Thorson notes that he and Wallace discussed:

> that the records would allow for significant argument to a jury regarding the 'resulting in death' causation issue, but that if we prevailed on that issue, the Defendant would still face a guideline range of 360 to life for the controlled substance offenses with separate 360-month and 120-month consecutive sentences for the firearm charges. The Defendant had a more than adequate understanding of the legal and factual issues in the case based on our review and discussion of the evidence against him. He was aware of and vocal about the potential weaknesses in the government's case, but he persisted in his desire to accept the plea agreement as presented to the Court.

*Id*.

Continuing, Wallace alleges that his counsel failed to "attempt to negotiate a favorable plea agreement." 2255 ECF Doc. 1 pp. 4, 31. This claim is an extension of his earlier complaint that counsel failed to obtain the toxicology report and autopsy findings to establish L.T.'s death, and that Wallace would have gone to trial instead of pleading guilty. *Id*. 31-33. But Wallace assumes that (1) his counsel did not see this evidence and (2) that that evidence was favorable to Wallace's defense. Again, L.T.'s death was ruled an overdose, witness accounts noted L.T. took pills obtained from Wallace immediately before overdosing, that those pills contained fentanyl, and Wallace attested to these facts in two separate factual bases that he stipulated to and signed. Criminal ECF Docs. 42 ¶¶ 6-10; 27; 41; 57 pp. 21-23; 58 pp. 5-6.

Given the evidence against Wallace, counsel's plea negotiation was favorable. As the PSR stated, Wallace was already subject to a 20-year minimum sentence based on the drug trafficking charge alone. Criminal ECF Doc. 42 ¶ 62. Because of the applicable

**Response to Section 2255 Motion-Page 17**

sentencing enhancements, his guideline range was 360-months to Life. *Id.* ¶ 63. Counsel bargained for a sentence "not to exceed 360 months," the low end of his guideline range. Criminal ECF Doc. 25 ¶ 4(a). Had Wallace chosen not to enter a binding plea agreement with the government and had been convicted at trial, he would have been subject to a guideline range of 840 months to Life imprisonment. *Id.* ¶ 65. Counsel's negotiation was to Wallace's benefit, and he cannot show otherwise, given the evidence against him and his potential sentencing exposure. *United States v. Holmes,* 406 F.3d 337, 361 (5th Cir. 2005) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue") (quoting *Green v. Johnson,* 160 F.3d 1029, 1042 (5th Cir. 1998)).

In his affidavit, Thorson notes that the plea agreement "was offered in lieu of trial on all counts in the indictment. The agreement further bound the state prosecuting authorities from prosecution of related state charges." *Exhibit A* p. 5. He recalls that the plea was the result of "[m]onths of negotiation and analysis of evidence [that] yielded no better offer." *Id.*

In total, Wallace has made no showing that his counsel was ineffective during the pre-trial phrase of his case. To the contrary, counsel met with Wallace, reviewing the discovery with him, discussing his punishment exposure, and evaluating the risks of going to trial against the government's plea offer. Wallace's petition should be dismissed.

Ground Two: Ineffective Assistance – Sentencing Phase

**Response to Section 2255 Motion-Page 18**

In Ground Two, Wallace alleges that his counsel failed to "properly discuss and explain the PSR to Wallace prior to the Sentencing Hearing." 2255 ECF Doc. 1 pp. 5, 35. Wallace also complains that his counsel failed to file "substantive objections to the PSR, and argue for mitigation of punishment." *Id.* These claims are unsupported by the record.

The sentencing transcript makes clear that Wallace was fully advised of the content of his PSR prior to his sentencing hearing. Criminal ECF Doc. 56. The Court began by asking Wallace if he had an opportunity to review his PSR, whether he understood it, if his counsel could answer any questions he had about it, and if he believed it adequately covered his background. *Id.* p. 3. Wallace answered affirmatively to each of these questions. *Id.* The Court also asked his counsel whether he reviewed the PSR with Wallace, and he also stated he had. *Id.* These "[s]olemn declarations" that Wallace made "in open court" "carry a strong presumption of verity." *United States v. Lampazianie*, 251 F.3d at 524 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). And no hearing or relief is warranted if a petitioner's allegations "cannot be accepted as true because they are contradicted by the record [or] inherently incredible." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)). Wallace himself admitted he had reviewed and discussed his PSR with counsel.  Accordingly, there is no basis to refute his own statements now.

Wallace also complains that counsel failed to file "substantive objections" to the PSR. 2255 ECF Doc. 1 pp. 5, 35-40. Counsel, however, did file an objection to the PSR: arguing that the two-level increase to Wallace's offense level for misrepresenting fentanyl

**Response to Section 2255 Motion-Page 19**

for another drug was misapplied. Criminal ECF Doc. 42 pp. 20-21. Counsel then reiterated this objection at sentencing. Criminal ECF Docs. 42 pp. 20-21; 56 pp. 5-8. That the Court overruled counsel's objection does not obviate the fact that counsel advocated on Wallace's behalf. Instead, Wallace claims that counsel should have filed additional objections, including:

- the medical examiner's classification of the cause of death as undetermined;

- toxicology findings failing to confirm fentanyl as the cause of death; and

- absence of scientific proof establishing but-for causation as required under federal law.

2255 ECF Doc. 1 p. 36.

As noted throughout this response, Wallace pleaded guilty to the facts agreed to in his factual basis that L.T. overdosed on fentanyl that he provided. Criminal ECF Docs. 27; 41. Had counsel filed Wallace's newly proposed objections, there is no likelihood that those objections would have been sustained. Counsel cannot be ineffective for failing to press a frivolous point. *Sones v. Hargett,* 61 F.3d 410, 415 n. 5 (5th Cir.1995); *see also Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir. 1990) ("[C]ounsel is not required to make futile motions or objections").

Wallace next asserts that his counsel "failed to advocate for mitigation and by failing to object to the substantive unreasonableness of the sentence imposed." 2255 ECF Doc. 1 pp. 5, 41. This claim is without merit and unsupported by the record. Wallace's counsel filed a motion for variance on his behalf (Criminal ECF Doc. 46) and argued for

**Response to Section 2255 Motion-Page 20**

a lesser sentence of 20 years, instead of the maximum allowable sentence of 360 months (per his plea agreement). Criminal ECF Doc. 56 pp. 9-11. The Court denied Wallace's motion for variance. *Id.* p. 13. The Court then sentenced Wallace to 360 months' imprisonment, a sentence that followed his plea agreement and that represented the low end of his guideline range. *Id.* 18. There was nothing about Wallace's ultimate sentence that counsel could have alleged was "unreasonable," particularly when Wallace agreed to that sentence and benefitted from that agreement. Again, counsel is not ineffective for failing to press a frivolous point. *Sones v. Hargett,* 61 F.3d 410, 415 n. 5 (5th Cir.1995).

Thorson's affidavit recounts that he and Wallace "discuss[ed] the issues in the initial PSR, I filed objections and we appeared before the Court to address an amendment to the factual basis following analysis of the legal and factual issues that the Defendant and I discussed during our review of the initial disclosure of the presented report. Further, substantive objections were filed regarding the guideline calculations in the PSR and were overruled by the Court." *Exhibit A* pp. 5-6. Thorson also notes that he advocated for Wallace by providing "mitigating evidence in the form of character letters to the Court and written and oral argument of counsel. The record also indicates that the Court's balancing of the mitigating evidence and the aggravating circumstances of the offense and the Defendant's criminal history weighed in favor of the latter." *Id.* Thorson further states that he "believed that an objection to the Court following the 11(c)(1)(C) plea agreement in a fentanyl death case where the agreement bound the Court to the low end

of the sentencing guideline range and eliminated the potential for a 30-year minimum consecutive firearm possession sentence would not be warranted." *Id.*

In Wallace's final claim, he alleges that counsel failed to file a notice of appeal on his behalf. 2255 ECF Doc. 1 pp. 5, 43-45. Wallace, however, does not allege or supply evidence that he ever told counsel that he wanted to appeal or that he instructed him to file a notice of appeal. To the contrary, Thorson recounts that Wallace "executed the Court's promulgated waiver before sentencing indicating that:

> 'I am advised that the law provides a defendant a right to appeal a conviction and sentence and to seek court-appointed counsel and permission to appeal free of cost if unable to pay for an appeal. With few exceptions, any notice of appeal must be filed within 14 days of the date of judgment is entered or within 14 days of the filing of a notice of appeal by the Government. If I have entered into a plea agreement that waives certain appellate rights, I am advised that such waiver is generally enforceable but may be challenged on appeal if I believe it to be invalid or unenforceable. Understanding my appellate rights, I waive the oral advisement in court of those rights.'"

*Exhibit A* p. 6; Criminal ECF Doc. 48.

Thorson reviewed this waiver with the Defendant, who signed it and acknowledges that he understood how to "assert his appellate rights." *See Exhibit A* p. 6. Thorson states that Wallace "never communicated to me a desire to appeal his sentence or instructed me to file a notice of appeal on his behalf. I therefore took no action on his behalf to do so." *Id.* pp. 6-7. Thus, this is not a case involving "a lawyer who disregards specific instructions from the defendant to file a notice of appeal[.]" *Roe v. Ortega*, 528 U.S. 470, 477 (2000). Thus prejudice is not presumed. *Cf. United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007).

Rather, the Supreme Court has explained that "[i]n those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, [] the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal." *Flores-Ortega*, 528 U.S. at 478. If the attorney did not consult, then the question becomes whether the attorney had an obligation to consult. *Id.* at 478-79. "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. *Flores-Ortega* makes clear that counsel does not have a constitutionally imposed duty to consult in all cases, but only when one of these conditions are met. *Id.* In making this inquiry, the Court considers various factors, including whether the conviction followed a guilty plea, whether the movant received the bargained-for sentence, whether there was an appellate waiver, and whether there were non-frivolous grounds for appeal. *Id.*

None of these factors weigh in favor of a duty to consult here. Wallace's conviction followed his guilty plea, signifying that Wallace sought "an end to judicial proceedings." *Id.* Wallace received a sentence in line with his plea agreement. His guideline range was calculated according to the facts he stipulated to in his factual basis. Criminal ECF Doc. 42 ¶¶ 17, 19. He received a three-level downward adjustment for

**Response to Section 2255 Motion-Page 23**

acceptance of responsibility. *Id.* ¶¶ 25-26. And he received a prison sentence of 360 months, the low end of his guideline range and the maximum sentence he could receive based on his plea agreement, and a sentence below the statutory maximum of life. *Id.* ¶¶ 62-63 & Sentencing Table.

Nor has Wallace shown, or tried to show, that any nonfrivolous grounds for appeal existed. Doing so would be a tall order, for Wallace agreed to the facts that informed his sentence and guided his guideline range. Criminal ECF Docs. 27, 41; 42 ¶¶ 17, 19; 57 pp. 21-23; 58 pp. 5-6. Moreover, any potential ground for appeal would be barred by the robust appellate waiver in Wallace's plea agreement. *Flores-Ortega*, 528 U.S. at 480 (explaining that in determining whether counsel had a duty to consult, "the Court must consider…whether the plea expressly reserved or waived some or all appeal rights."). Wallace waived the right to appeal his conviction and sentence on "all grounds," reserving only "the right to appeal any punishment imposed in excess of the statutory maximum" or a "claim of ineffective assistance of counsel." Criminal ECF Doc. 25 ¶ 10. Wallace also confirmed with the Court during his change-of-plea hearing that he understood he was waiving his appellate rights, other than those two exceptions. Criminal ECF Doc. 57 pp. 18-19. Neither of those exceptions applied. Wallace was sentenced far below the statutory maximum, and a claim of ineffective assistance of counsel, in general, cannot be raised on direct appeal. *See Massaro v. United States,* 538 U.S. 500, 504-06 (2003).

**Response to Section 2255 Motion-Page 24**

Wallace has thus failed to show that Thorson rendered ineffective assistance. Nor has he shown prejudice. The record shows that Wallace was informed of his appellate rights. And there is no evidence (or even an allegation) that Wallace instructed Thorson to file a notice of appeal. *See Exhibit A* pp. 6-7. Wallace's claim fails. *See, e.g., Mollohan v. United States*, 2022 WL 17843063, *3 (W.D. Mich. Dec. 22, 2022) (finding that "there is simply no basis to find ineffective assistance based on a failure to file an appeal" where movant did "not allege that she ever asked her attorney to file a notice of appeal"; where the court informed movant of her appellate rights; where defense counsel provided a specific affidavit; and where prospects of a successful appeal were dim); *Barraza v. United States*, 2013 WL 1187100, *2 (W.D. Tex. March 21, 2013) (movant failed to demonstrate prejudice when movant did not allege that counsel ignored an instruction to appeal); *United States v. Ellis*, 2005 WL 2035055, *11 (D. Kansas Aug. 23, 2005) (finding "that counsel's alleged failure to consult defendant about an appeal was neither deficient nor prejudicial" where conviction was the result of a guilty plea, sentence was "significantly less than the statutory maximum," and plea agreement contained appeal waiver).

## Conclusion

Wallace has claimed that his counsel rendered ineffective assistance by failing to communicate with him about the consequences of his guilty plea, failing to conduct an investigation, and failing to negotiate a favorable plea. Wallace also claimed that counsel failed to discuss his PSR with him or file substantive objections to it, failed to argue

mitigating circumstances or object to his sentence, and failed to file a notice of appeal despite Wallace not requesting one to be filed. These claims all lack any legal or factual basis. Wallace has made no showing that his counsel rendered deficient performance. For these reasons, the Court should deny Wallace's motion.

Respectfully submitted,

JAY R. COMBS
UNITED STATES ATTORNEY

*/s/ Lucas Machicek*
LUCAS MACHICEK
Assistant United States Attorney
110 N College, Suite 700
Tyler, Texas 75702
903-590-1400 (main)
Lucas.Machicek@usdoj.gov

## CERTIFICATE OF SERVICE

On June 5, 2026, I certify that a true and correct copy of the government's response to motion was mailed from Tyler, Texas, to: Kym Wallace, Reg. No. 38137-511, FCI Pollock, P.O. Box 4050, Pollock, LA 71467.

*/s/ Lucas Machicek*
LUCAS MACHICEK

**Response to Section 2255 Motion-Page 26**