IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 6:24-CR-115-JDK |
| | § | |
| KYM ANDREW WALLACE | § | |

**AFFIDAVIT OF J. BRANDT THORSON IN RESPONSE TO DEFENDANT KYM ANDREW WALLACE'S 28 U.S.C. §2255 MOTION TO VACATE**

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF GREGG | § |

KNOW ALL MEN BY THESE PRESENTS:

"The purpose of this affidavit is to address complaints made by Kym Andrew Wallace (hereinafter "Defendant") contained in a Motion to Vacate pursuant to 28 U.S.C. §2255 filed in the above captioned cause, alleging ineffective assistance of trial counsel. This affidavit is to be filed in response to the claim of ineffective assistance, therefore any claim of attorney client privilege made by Defendant is waived.

"My name is John Brandt Thorson. My Texas State Bar Number is 24043958. I am licensed to practice law in the State of Texas and have been so licensed since May 4, 2004. I became board-certified in criminal law by the Texas Board of Legal Specialization in December 2019 and was recertified in December, 2024. I previously served as an assistant criminal district attorney in Gregg County, Texas. I have been in private practice as a criminal defense lawyer since 2006. I am admitted to practice in the United States Federal

District Courts for the Eastern District and the Northern District of Texas and regularly engage in defense of federal criminal cases. I have represented hundreds of clients in criminal cases, and I have never been found ineffective.

"I was engaged as trial counsel by Defendant Applicant on or about July 31, 2024 following his arrest for state charges related to the instant matter. On September 18, 2024, a Federal Grand Jury for the Eastern District of Texas returned a nine-count Indictment against the Defendant,  containing allegations of violations of 21 U.S.C. §841(a)(1); 18 U.S.C. §2, Possession with Intent to Distribute and Distribution of Fentanyl; 18 U.S.C. § 924(c) Use, Carrying and Possession of a Machinegun, During, in relation to, and in Furtherance of a Drug Trafficking Crime; 18 U.S.C. § 924(c) Use Carrying and Possession of a Firearm, During, in relation to, and in Furtherance of a Drug Trafficking Crime; and 18 U.S.C. 922(o) Unlawful Possession of a Machinegun.

"Defendant was transferred into federal custody for the instant offense on or about September 26, 2024. On January 8, 2025, Defendant appeared before Magistrate Judge John D. Love and entered a plea of guilty to Count 1 of the indictment pursuant to a Rule 11(c)(1)(C) binding plea agreement. The final version of the presentence report was filed May 30, 2025. The matter was set for sentencing on July 30, 2025. At the conclusion of the sentencing hearing the trial court imposed a 360-month prison sentence, no fine, a $100.00 special assessment and a three-year period of supervised release following incarceration.

"The facts of the instant case involve allegations that Defendant sold pills represented to be Percocet to ███████████ on May 29, 2024, which were then delivered by her to a juvenile female, ███████. A 911 call was made reporting that after

snorting one of the pills, ▮ had become unresponsive. Records indicate that when law enforcement arrived the otherwise healthy 17-year-old ▮ was unconscious, exhibited symptoms of an overdose and had no pulse. ▮ was transported to the hospital, never regained consciousness, and later died on June 5, 2024, following preparation of her body for organ donation.

"Law enforcement then engaged with a confidential informant (▮▮▮) to conduct covertly monitored purchases from the Defendant of pills marked and identified as Percocet which were determined by laboratory testing to contain Fentanyl. Three separate sales of fentanyl pills were undertaken. On July 19, 2024, a fourth purchase was arranged at which time law enforcement encountered the Defendant in his vehicle and arrested him. The vehicle he was driving contained more than 10 grams of fentanyl and a Glock .40 caliber pistol with an attached device rendering it capable of functioning as a machine gun. A search of the residence where his vehicle was parked and he had been observed leaving yielded a large quantity of fentanyl, cocaine, marijuana, methamphetamine, another pistol and a loaded AK-47.

"The Defendant alleges that I failed to adequately communicate with him and inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial. I had extensive communication with the Defendant between his arrest in July, 2024 and guilty plea in January, 2025. The evidence obtained during the government's investigation was substantial regarding the Defendant's distribution of pills containing fentanyl and his possession of dangerous weapons, including a "glock switch" machine gun. The plea agreement presented to the court contemplated a minimum statutory

sentence of 20 years, and a maximum of not more than 30 years (360 months). The Defendant's properly calculated guideline sentence regarding the offense of conviction was 360 months to Life. Should Defendant have proceeded to trial and been convicted on all counts, he would have faced a sentencing guideline range of 840 months to Life. The Defendant did not like the terms of the plea agreement, but he was fully aware of the evidence against him and the potential result of a jury trial and chose to accept the plea agreement as reflected in the record before the Court.

"The Defendant alleges that I failed to conduct an adequate and independent pretrial investigation. The Defendant's central complaint regarding the case is the question of causation regarding the allegation of his distribution of pills containing fentanyl and the death of ███████. The Defendant complains that I did not obtain ███'s toxicological records or the report of her autopsy. Those records were contained in the government's discovery materials, and we discussed them extensively. We discussed that the records would allow for significant argument to a jury regarding the "resulting in death" causation issue, but that if we prevailed on that issue, the Defendant would still face a guideline sentence range of 360 to life for the controlled substance offenses with separate 360-month and 120-month consecutive sentences for the firearm charges. The Defendant had a more than adequate understanding of the legal and factual issues in the case based on our review and discussion of the evidence against him. He was aware of and vocal about the potential weaknesses in the government's case, but he persisted in his desire to accept the plea agreement as presented to the Court.

"The Defendant alleges that I failed to attempt to negotiate a favorable plea agreement. The plea agreement presented is what was offered in lieu of trial on all counts in the indictment. The agreement further bound the state prosecuting authorities from prosecution of related state charges.  The evidence against Defendant was substantial. The Defendant sold pills to a friend of ███'s prior to her death. Evidence indicated that the pills caused ███'s death. He then sold pills containing fentanyl to the same friend of ███'s while she worked as a confidential informant during covertly controlled purchases monitored by law enforcement. When law enforcement encountered him, he was in possession of large quantities of fentanyl and other controlled substances as well as a machine gun. Based on the facts, the plea agreement he accepted was the plea agreement that was offered. Months of negotiation and analysis of evidence yielded no better offer.

"The Defendant alleges that I failed to properly explain the PSR to him prior to sentencing and that I failed to file substantive objections to the PSR. The record indicates that the Defendant confirmed under oath that we had adequately reviewed the PSR and he was able to ask any questions and discuss the issues therein with me prior to sentencing. We did discuss the issues in the initial PSR, I filed objections and we appeared before the Court to address an amendment to the factual basis following analysis of the legal and factual issues that the Defendant and I discussed during our review of the initial disclosure of the presentence report. Further, substantive objections were filed regarding the guideline calculations in the PSR and were overruled by the Court at sentencing.

"The Defendant alleges that I failed to argue for mitigation of punishment and object to his sentence being substantively unreasonable. The record indicates presentation of

mitigating evidence in the form of character letters to the Court and written and oral argument of counsel. The record also indicates that the Court's balancing of the mitigating evidence and the aggravating circumstances of the offense and the Defendant's criminal history weighted in favor of the latter. Regarding substantive unreasonableness, I believed that an objection to the Court following the 11(c)(1)(C) plea agreement in a fentanyl death case where the agreement bound the Court to the low end of the sentencing guideline range and eliminated the potential for a 30-year minimum consecutive firearm possession sentence would not be warranted.

"The Defendant finally alleges that my failure to file a notice of appeal deprived him of effective assistance of counsel. On July 29, 2025, the Defendant executed the Court's promulgated waiver before sentencing indicating that:

> "I am advised that the law provides a defendant a right to appeal a conviction and sentence and to seek court-appointed counsel and permission to appeal free of cost if unable to pay for an appeal. With few exceptions, any notice of appeal must be filed within 14 days of the date judgment is entered or within 14 days of the filing of a notice of appeal by the Government. If I have entered into a plea agreement that waives certain appellate rights, I am advised that such waiver is generally enforceable but may be challenged on appeal if I believe it to be invalid or unenforceable. Understanding my appellate rights, I waive the oral advisement in court of those rights."

I reviewed the above waiver with the Defendant in advance of the sentencing hearing explaining its purpose and the rights contained in the waiver. Defendant signed the same acknowledging that he understood how to assert his appellate rights. The Court accepted the parties' binding plea agreement and sentenced Defendant within its bounds. Following sentencing and before the filing of his motion to vacate pursuant to 28 U.S.C. §2255 on April 2, 2026, the Defendant never communicated to me a desire to appeal his sentence or

instructed me to file a notice of appeal on his behalf. I therefore took no action on his behalf

to do so."

"FURTHER AFFIANT SAYETH NOT."



J. Brandt Thorson, Affiant
SBN: 24043958
428 N. Fredonia St.
Longview, Texas 75601
T: 903-758-4740

STATE OF TEXAS

COUNTY OF GREGG

SUBSCRIBED AND SWORN TO BEFORE ME ON THIS THE 20th DAY OF MAY,

2026.

PAMELA SUE AGUILAR
Notary ID #11076391
My Commission Expires
December 29, 2029

NOTARY PUBLIC STATE OF TEXAS